## JOSLIN v. NORTHERN PAC. R. CO.

(Circuit Court, D. Minnesota, Third Division. April 3, 1893.)

PATENTS FOR INVENTIONS—LIMITATION OF CLAIMS—CAR COUPLERS.

Letters patent No. 337,780, issued to Charles Mueller, March 9, 1886, for an improvement in car couplings, was for an improvement in that class of drawheads in which the strain is received upon a reciprocating plate held in place by a spring, the object of the invention being to strengthen those parts on which there is a great amount of friction in order to retain them in place. The claim was as follows: "In combination with the draft bars and the follower plates, the wearing plates provided with bent ends entering the draft bar, and provided with slots or openings, and the lugs provided with tenons entering the slots in the plates, and the bolts passing through the said lugs, wearing plates, and draft bars." *Held*, that the patent, to be valid, must be strictly limited to the combination described in the claim, and is not infringed by a device wherein the plates are bent in towards the center of the car, and do not enter the draft bar.

In Equity. Suit by Benjamin J. Joslin against the Northern Pacific Railroad Company for the infringement of a patent. Decree for defendant.

C. E. Joslin, for complainant.
Banning, Banning & Payson, for defendant.

NELSON, District Judge. This is a suit brought by complainant to recover from the defendant damages for an infringement of letters patent No. 337,780, issued to Charles Louis Mueller, March 9, 1886, for improvements in car couplings. The complainant is the owner of the patented device, by proper instrument of assignment. The defenses set up are (1) want of novelty; (2) noninfringement. The patent in controversy is granted for an improvement in a car-coupling device. The invention, as described in the letters patent, relates particularly to that class of drawheads in which the strain imparted in drawing the cars, or in receiving the impact of adjoining cars in coupling, is received upon a reciprocating plate held in place by a spring, and the object of the invention, as stated in the specification, "is to produce a drawhead in which these parts upon which there is any great amount of friction or wear shall be strengthened, in order to retain the different parts in their proper places, and to successfully withstand the hard usage to which drawheads are usually subjected." The patentee has reinforced the durability of the wooden draft bars by iron plates secured by the mode described. At the place where the wooden draft bars require protection from the movement of the follower plates in contact with them, and by the peculiar form of the wearing plates and their disposition, they not only protect the bars, but prevent displacement of the parts resting thereon; and the various details of the construction are such that the parts are retained in their proper relative positions.

In his specification he refers to the drawings of the patent, showing the devices of his invention, and states that—

"A drawhead made in accordance with my invention will be much more durable and reliable in operation, by reason of the fact that the parts will always be retained in their proper positions, and are not liable to become displaced by being worn, for the reason that the plates, A, upon which most of the wear comes, may be readily removed, and replaced by others, while in the ordinary form of drawheads the wood of the drawheads is exposed, and soon becomes worn, causing a displacement of the operative parts."

He then sets forth the claim:

"In combination with the draft bars and the follower plates, the wearing plates provided with bent ends entering the draft bar, and provided with slots or openings, and the lugs provided with tenons entering the slots in the plates, and the bolts passing through the said lugs, wearing plates, and draft bars, substantially as described."

The patentée uses in connection with the old and usual drawhead found upon freight cars wearing plates with bent ends entering the draft bars, to prevent the follower plates from wearing out or impairing the wood, and he also provides slots or openings or lugs having tenons entering the openings in the plates and bolts passing through the lugs, wearing plates, and the wooden draft bars, so as to prevent not only wear, but also to strengthen those parts upon which there is any great amount of strain and friction, and to retain the different parts in their proper places, and by means of the wearing plates and the openings, lugs and bolts, and other features described, to enable the drawheads to withstand hard usage.

There is certainly no novelty in putting an iron-plate covering over a wooden surface to prevent wearing of that surface by the friction of another piece of iron moving on it; so that, if the patent is valid, it must be limited to the peculiar combination described in the claim and specification in detail, and cannot be broadened to include any mode of covering of the wooden draft bars by iron wearing plates. The patentee describes the wearing plates as follows:

"The ends of these plates are bent at right angles, and form the projections, a, which enter the draft bars, and aid in retaining them in place on the same."

The proceedings in the patent office show that it rejected some of his original claims for wearing plates attached to the draft bars, and gave him the one claim which is set forth above, which provides for wearing plates with bent ends entering the draft bars as an element of the combination.

The patentee, in his testimony, states that he claims protecting plates with bent ends entering the draft timber, and nothing else. His expert, in his testimony, states that one of the elements of the combination is wearing plates having the bent ends entering the draft bar, and provided with slots, and the lugs provided with tenons entering the slots. True, he says, that he finds in the draft rigging used by defendant substantially the same elements of the Mueller combination, with the exception that the position of the wearing plate is reversed with the bent ends pointing inward towards the center of the car, instead of being imbedded in the draft bars, as in the Mueller patent; and the defendant's expert says in his testimony that the wearing plates in defendant's rigging are entirely different

in structure and form from Mueller's, and that the bent ends of defendant's plates perform no such function as the bent ends of Mueller's plates, which are let into the timbers, and the sole object of that was to present a larger resisting surface. I agree with the view taken by this witness, that the structures are different.

The defendant uses a drawhead having iron covering plates with the ends bent inward, which do not enter the wooden draft bars or timbers. Its plates are gained into the timbers the thickness of each plate, and have a flange on the upper side turned inward, which serves as a support to the edges of the follower plates, and a crossbeam is also inserted between the draft bars at the inner ends of the plates. These plates are substantially different from the Mueller plates in their construction and operation. They certainly are not supported in the same way, and their ends are not bent and inserted into the bars to aid in retaining it in place. The inner ends of the defendant's plates, by butting against this crossbeam between the draft bars, prevent in some degree the plates from moving endways in "buffing," but not like the Mueller plates with bent ends entering the draft bars, which prevent them from moving endways in "buffing" and drawing. The same function is not performed by defendant's construction. The patentee, to fulfill his combination, must have the ends of the plates forming projections inserted into the draft bars.

It is true the plates of the defendant are gained into these bars, but no bent ends enter them. Clearly, flat plates fastened upon the surface of the wooden draft bars, used in combination with the old and ordinary draft rigging, would not infringe the patentee's claim unless the ends were bent and inserted into the timber; and so wearing plates with the ends bent inward towards the center of the car, and not entering the draft bars, and having no connection with the draft bars except as they form a part of the plates, do not infringe, for the function performed by the bent ends is not the same as when entering the bars. The wearing plates with bent ends entering the draft bars are material elements of the Mueller combination.

The doctrine of equivalents does not broadly apply, as the patentee was not the first inventor of a car-coupling device. His invention is an improvement, denominated a "secondary" invention; and, the claim being limited to a combination having a peculiar form of wearing plates entering the draft bars, before he could get his patent it must be strictly construed. See Lubricator Co. v. Wurster, 38 Fed. Rep. 429. As said in that case, "the patentability of complainant's combination was, in view of the state of the art, extremely doubtful." There is no infringement, and the decree must be for the defendant. It is so ordered.